**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**
**NORTHWESTERN DIVISION**

| | | |
|---|---|---|
| Eric Clausen, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER GRANTING DEFENDANTS'** |
| vs. | ) | **MOTION FOR JUDGMENT ON** |
| | ) | **THE PLEADINGS** |
| National Geographic Society, | ) | |
| National Geographic Society Education | ) | |
| Foundation, North Dakota Geography | ) | |
| Education Fund, and North Dakota | ) | |
| Geographic Alliance, | ) | Case No. 4:08-cv-103 |
| | ) | |
| Defendants. | ) | |

Before the Court is the Defendants' motion for judgment on the pleadings filed on April 6,

2009.  See Docket No. 10.  The Plaintiff filed a response in opposition to the motion on April 27,

2009.  See Docket No. 14.  The Defendants filed a reply brief on May 6, 2009.  See Docket No. 20.

For the reasons set forth below, the Court grants the Defendants' motion for judgment on the

pleadings.


I.      **BACKGROUND**

The defendant, National Geographic Society Education Foundation (NGS Foundation), is

a non-profit organization that operates as a division of the defendant, National Geographic Society

(NGS), which is also a non-profit organization.  The mission of the NGS Foundation is to "promote

geographic literacy for all children."  See Docket No. 3-3.  The NGS Foundation, through its

Education Network grant program, provides financial support to its nationwide grassroots network.

The defendant, North Dakota Geographic Alliance (ND Alliance), is the state organization that

participates in the NGS Foundation's grant program.

In 1995, Minot State University (MSU) was selected as the ND Alliance host institution. The plaintiff, Eric Clausen, was chosen to serve as director of the ND Alliance.  In late 1999, the NGS Foundation announced plans to phase out and terminate its formula grant funding for the nationwide geographic alliance program.  See Docket No. 1-1.  The NGS Foundation gave each state geographic alliance the choice to alter its programs and activities and apply for newly-developed NGS Foundation competitive grants, and/or to receive annual grants from a fund that was not yet established.

A.      THE MEMORANDUM OF AGREEMENT

In 2001, the NGS Foundation and the MSU Development Foundation signed a memorandum of agreement which created the defendant, North Dakota Geography Education Fund, with the MSU Development Foundation contributing $250,000 and the NGS Foundation matching that amount. See Docket No. 3-1.  The agreement contained a provision entitled "Return of Grant Funds" which states in part:

> In the event the [NGS] Foundation materially breaches this Agreement by (1) failing to apply the income of the Fund for the specified purposes, or (2) failing to appropriately consider the recommendations of the advisory body as provided herein, and fails to correct such breach after 60 days written notice by [MSU Development Foundation], [MSU Development Foundation] shall have the right to receive a return of the contribution in an amount equal to the [MSU Development Foundation] original contribution amount and any accumulated and unexpended income thereon.

See Docket No. 3-1.  The Memorandum of Agreement also held that a representative of the MSU Development Foundation was to be on the ND Alliance Board.  See Docket No. 3-1.  Clausen, who had already been serving as the ND Alliance director since 1995, also became the MSU Development Foundation representative for the ND Alliance Board in 2001.  See Docket Nos. 1-1.

2

In 2001, the ND Alliance adopted a constitution which held, in part, that the ND Alliance publishes the ND Alliance Magazine, that the ND Alliance administrative office will be located in Minot, North Dakota, and that the MSU business office will serve as the ND Alliance fiscal manager.  See Docket No. 3-2.

Clausen had made contributions to the MSU Development Foundation in the past. According to the complaint, Clausen requested that his $120,000 donation to the MSU Development Foundation be included as part of the $250,000 contribution the MSU Development Foundation was required to make to create the fund.  See Docket No. 1-1.  The complaint alleges that his request was based on the ND Alliance's plans to alter its programs and activities and to adopt the new constitution in 2001.  See Docket No. 1-1.  The complaint also alleges that Clausen contributed another $60,000 or more to the MSU Development Foundation, which upon Clausen's request, was used to benefit the ND Alliance.  See Docket No. 1-1.

From 2001 to 2006, Clausen voluntarily agreed to serve as the ND Alliance director and the ND Alliance magazine editor and publisher.  The complaint alleges that Clausen served in these capacities at a significantly reduced salary than what the ND Alliance had previously paid him to serve in the same positions, and that he personally paid most of his ND Alliance-related expenses. See Docket No. 1-1.

### B.   THE NATIONAL GEOGRAPHIC BEE

The NGS operates an annual geography competition for students in grades 4 - 8, known as the National Geographic Bee (Bee).  Clausen participated in the North Dakota Bee competition as a judge or similar capacity from 1996 - 2004.  The complaint alleges that the geography bee

competition favors male contestants, that more than 90% of the winners are males, and that at the

2004 North Dakota Bee competition, Clausen witnessed the disappointment of female contestants.

See Docket No. 1-1.  The complaint further alleges that in April 2004, following the 2004 North

Dakota Bee competition, Clausen complained to the NGS National Bee Coordinator about

competition practices, including a failure to adequately address the National Geography standards.

The complaint alleges, in part,

42.

That in April of 2005, with almost no advance notice to the Plaintiff, at the [ND]
Alliance board meeting where the [ND] Alliance grant application for its 2005-2006
Fund grant was to be approved, the NGS representative who was representing the
[NGS] Foundation at the meeting, provided Plaintiff with new guidelines for [NGS]
Foundation managed Fund grant applications that radically changed previous [NGS]
Foundation competitive grant programs and that also required the [ND] Alliance to
"advocate for better education policies and practices, including stronger alignment
of geography standards with state curricular offerings and assessment" and "monitor
the state curricular process and promote institutionalization of standards-based
instruction, projects, and assessment across the state and in local school districts."
Hereinafter referred to as the "New Guidelines".

43.

That because the [ND] Alliance had no advance notice of the 2005 grant application
guideline change, the [ND] Alliance submitted in 2005 a Fund grant application that
was similar to the Fund grant application it had submitted in 2004 that the [NGS]
Foundation had funded without question.

44.

That in May of 2005, in response to the New Guidelines, Plaintiff personally decided
to advocate for Bee changes that would provide girls with an equal opportunity to
win.   At the same time, Plaintiff made a $10,000 contribution to [the MSU
Development Foundation] with instructions that the funds were to be added to the
[NGS] Foundation managed Fund when, among other things, all NGS operated
student competitions in North Dakota provided boys and girls equal opportunities to
win.

45.

That in the summer of 2005, in response to the New Guidelines, Plaintiff wrote two
letters to the then [NGS] Foundation director (who also served as NGS Vice
President of Education and Children's Programs under which the Bee is

4

administered) stating that Plaintiff intended to advocate for correction of the Bee gender inequity problem.

46.

That in early October of 2005, Plaintiff received a phone call from two NGS/[NGS] Foundation employees saying the [NGS] Foundation had deferred its 2005 Fund grant award to the [ND] Alliance (even though the [ND] Alliance application was similar to its 2004 application which the [NGS] Foundation had funded without question) because the 2005 application failed to adequately address the New Guidelines and that a new [ND] Alliance application had to be submitted.

47.

That Plaintiff then prepared for the [ND] Alliance board a draft grant application with a core program and budget identical to the program and budget in the 2005 grant application the [NGS] Foundation had deferred and addressed the New Guidelines requirements by offering to work with NGS to modify the Bee so girls would have an equal opportunity to win and so the Bee would better address the National Geography Standards, but that if NGS did not want to change the Bee, then the [ND] Alliance would design its own statewide student geography competition with the goals of entering into competition with the Bee and eventually replacing the Bee as North Daktoa's primary statewide student geography competition. . . .

See Docket No. 1-1.  Two other ND Alliance board members drafted alternate grant applications, one of which the complaint refers to as the "Compromise Application."


C.      CLAUSEN'S RESIGNATION

The complaint alleges that a ND Alliance Board conference call took place in October 2005, in which an NGS employee participated and heard Clausen say that the ND Alliance Board would not be able to honor the promises in the "Compromise Application."  See Docket No. 1-1.  The ND Alliance Board nonetheless approved the "Compromise Application" discussed during the conference call.  Clausen then submitted both his grant application and the "Compromise Application" to the NGS Foundation.  See Docket No. 1-1.  The complaint contends that Clausen received an email in early December 2005 which informed him that a 2005-2006 fund grant award

5

had been approved but did not indicate which application had been approved.  See Docket No. 1-1.
The complaint goes on to state that in late February 2006, Clausen was given an unsigned copy of
a 2005-2006 contract for the ND Alliance grant award that had significant changes from the
submitted grant applications, including the addition of a clause requiring the ND Alliance to reject
a $10,000 contribution that Clausen made to the MSU Development Foundation.  See Docket No.
1-1.  Clausen recommended that MSU not sign the offered NGS Foundation grant contract.  In early
April 2006, Clausen was also informed that the NGS Foundation would only accept the contract it
provided to him in February 2006.  See Docket No. 1-1.

According to the complaint, Clausen informed the ND Alliance Board that he would resign
if ordered to approve the NGS Foundation contract "because Plaintiff believed to do so would be
to commit perjury or fraud, knowing that the offered contract was based on an application that
included misrepresentations."  See Docket No. 1-1.  In April 2006, the ND Alliance Board ordered
Clausen to "sign" the offered NGS Foundation contract.  Clausen told the board that he would not
approve the contract and instead was contributing another $20,000 to the MSU Development
Foundation "to guarantee the Alliance core programs could continue through the 2005-2006
Alliance budget year," and that he (Clausen) would resign on August 31, 2006, when his current
responsibilities were completed.  See Docket No. 1-1.  Clausen told the ND Alliance Board that he
would reconsider his resignation and approve the contract if the board "could demonstrate to the
Plaintiff's satisfaction that the Alliance had the ability to (and would) honor the Alliance board
promises" made in the "Compromise Application" and included in the NGS Foundation's contract.
See Docket No. 1-1.

In June 2006, Clausen informed MSU and the MSU Development Foundation that he would resign as the ND Alliance director when his current responsibilities were completed, but he would remain as the MSU Development Foundation representative on the ND Alliance Board.

The complaint alleges that in early 2007, per Clausen's request, the MSU Development Foundation administrator entered into discussions with the NGS Foundation to determine if the NGS Foundation would return funds as provided in the Memorandum of Agreement creating the fund. See Docket No. 1-1. In May 2007, Clausen resigned as the MSU Development Foundation representative on the ND Alliance Board. A new ND Alliance Constitution was approved on February 8, 2008, which eliminated, among other things, all mention of the ND Alliance magazine, and moved the provision stating that the ND Alliance be based in Minot, North Dakota to the ND Alliance By-Laws. See Docket Nos. 1-1 and 3-6.

Clausen asserts that (1) the NGS Foundation breached its obligations to him in relation to the operation and management of the Fund; (2) the NGS Foundation breached its obligations to the Fund and the ND Alliance under the Memorandum of Agreement Creating the Fund; (3) the Defendants materially breached the Memorandum of Agreement Creating the Fund; and (4) the NGS, the NGS Foundation, and the ND Alliance retaliated against Clausen for complaining about the gender discrimination of the Bee, thus violating Title IX and state laws.

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, the Defendants request judgment on the pleadings and a dismissal of the action in its entirety. The Defendants contend that Clausen lacks standing to pursue the Title IX, breach of contract, state law discrimination, and fraud claims. The Defendants further contend that Clausen's state law retaliation claims are barred by the

applicable statutes of limitations and that the NGS Foundation does not owe Clausen a fiduciary duty.

## II.   **JURISDICTION**

It is well-established that federal courts are courts of limited jurisdiction.  Unlike state courts, federal courts have no "inherent" or "general" subject matter jurisdiction.  Federal courts can only adjudicate those cases which the Constitution and Congress authorize them to adjudicate.  Those types of cases generally involve diversity of citizenship (28 U.S.C. § 1332) or a federal question (28 U.S.C. § 1331).  Pursuant to 28 U.S.C. § 1331, district courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  The complaint alleges a claim under federal law.

A defendant may remove any civil action brought in state court to the district court of the United States "for the district and division embracing the place where such action is pending" if the district courts of the United States have original jurisdiction.  28 U.S.C. § 1441(a).  "Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 [federal question] of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein . . ."  28 U.S.C. § 1441(c).  This action was originally filed in state district court on November 3, 2008, and was properly removed to federal district court on December 1, 2008.  See Docket No. 1.

### III.   **STANDARD OF REVIEW**

Rule 12(c) of the Federal Rules of Civil Procedure establishes that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." "Judgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law." Faibisch v. Univ. of Minn., 304 F.3d 797, 803 (8th Cir. 2002) (citing United States v. Any & All Radio Station Transmission Equip., 207 F.3d 458, 462 (8th Cir. 2000)). When presented with a motion for judgment on the pleadings, a district court must "accept as true all factual allegations set out in the complaint" and "construe the complaint in the light most favorable to the plaintiff, drawing all inferences in his favor." Wishnatsky v. Rovner, 433 F.3d 608, 610 (8th Cir. 2006). The standard for judgment on the pleadings is the same as that for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Ashley County, Ark. v. Pfizer, Inc., 552 F.3d 659, 665 (8th Cir. 2009).

> When considering a motion for judgment on the pleadings (or a motion to dismiss under Fed. R. Civ. P. 12(b)(6)), the court generally must ignore materials outside the pleadings, but it may consider "some materials that are part of the public record or do not contradict the complaint," as well as materials that are "necessarily embraced by the pleadings."

Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (internal citations omitted).

### IV.   **LEGAL DISCUSSION**

The complaint alleges claims under several different theories: (1) Title IX of the Education Amendments of 1972; (2) the North Dakota whistle-blower statute; (3) the North Dakota Human Rights Act; (4) breach of contract; and (5) fraud. See Docket No. 1-1.

### A.   **TITLE IX**

Clausen contends that the Defendants violated Title IX of the Educational Amendments of 1972, 20 U.S.C. §§ 1681 et seq.  "Title IX prohibits sex discrimination by recipients of  federal education funding."  Jackson  v. Birmingham Bd. of Educ., 544 U.S. 167, 173 (2005).  20 U.S.C. § 1681(a) states, in relevant part: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ."  Title IX's definition of "program or activity" provides as follows, in part:

> For the purposes of this chapter, the term "program or activity" and "program" mean all of the operations of -
>
> . . .
>
> (3)    (A)    an entire corporation, partnership, or other private organization, or an entire sole proprietorship -
>
> (i)    if assistance is extended to such corporation, partnership, private organization, or sole proprietorship as a whole; or
>
> (ii)    which is principally engaged in the business of providing education, health care, housing, social services, or parks and recreation; or
>
> (B)    the entire plant or other comparable, geographically separate facility to which Federal financial assistance is extended, in;
>
> . . . any part of which is extended Federal financial assistance, except that [stating an exception that does not apply in the present case.]

20 U.S.C. § 1687.  "[D]iscrimination is prohibited throughout entire agencies or institutions if any part receives federal financial assistance."  Lam v. Curators of the Univ. of Mo. at Kansas City Dental Sch., 122 F.3d 654, 656 (8th Cir. 1997).

10

It is a violation of Title IX when a recipient of federal funding retaliates against a person "*because* he complains of sex discrimination." Jackson, 544 U.S. at 174 (emphasis in original). Clausen contends that the Defendants retaliated against him for complaining that the National Geographic Bee favors male contestants. In other words, Clausen contends that he is the victim of the retaliation, while the females that participate in the geography bee are the victims of unequal sex discrimination.

The complaint alleges that Clausen complained of sex discrimination in the following ways:

> 44.
> That in May of 2005, in response to the New Guidelines, Plaintiff personally decided to advocate for Bee changes that would provide girls with an equal opportunity to win. At the same time, Plaintiff made a $10,000 contribution to [MSU Development Foundation] with instructions that the funds were to be added to the [Fund] when, among other things, all NGS operated student competitions in North Dakota provided boys and girls equal opportunities to win.

> 45.
> That in the summer of 2005, in response to the New Guidelines, Plaintiff wrote two letters to the [NGS] Foundation director (who also served as NGS Vice President of Education and Children's Programs under which the Bee is administered) stating that Plaintiff intended to advocate for correction of the Bee gender inequity problem.

> . . .

> 47.
> That Plaintiff then prepared for the Alliance board a draft grant application . . . and addressed the New Guidelines requirements by offering to work with NGS to modify the Bee so girls would have an equal opportunity to win . . .

See Docket No. 1-1.

The complaint further alleges "[t]hat the actions of NGS, the [NGS] Foundation and the [ND] Alliance board against the Plaintiff in response to the Plaintiff's complaints of the gender bias of the Bee constitute retaliation." See Docket No. 1-1. Clausen contends that the Defendants committed retaliation when they rejected the grant application Clausen submitted for the ND

Alliance, the NGS Foundation offered its contract to the ND Alliance, the Defendants stopped publishing the ND Alliance magazine, the Defendants maintained a position that forced Clausen to resign, and the Defendants changed the ND Alliance Constitution.

The Defendants contend that Clausen lacks standing to assert a sex discrimination claim under Title IX relating to the National Geographic Bee, and that his retaliation claim fails because he did not engage in "protected activity," and his decision to resign was not an adverse action.

### 1.    STANDING

Under Article III of the United States Constitution, a plaintiff must have "standing" to invoke the power of the federal court.  Allen v. Right, 468 U.S. 737, 751 (1984).  The constitutional requirements of standing are that (1) the plaintiff must have a "distinct and palpable" injury; (2) the injury must be fairly traceable to the defendant's conduct; and (3) relief from the injury must be likely to follow a favorable decision from the court.  The question of standing is one of law for the court to determine.  Park v. Forest Serv. of the U.S., 205 F.3d 1034, 1036 (8th Cir. 2000).  It is clear under Title IX that only the participants in the federally-funded education program or activity who have allegedly been discriminated against have standing to bring a claim.  See Burrow v. Postville Cmty. Sch. Dist., 929 F. Supp. 1193, 1199 (N. D. Iowa 1996).

Clausen essentially alleges that the National Geographic Bee discriminates against female contestants.  It is undisputed that Clausen was never a contestant or participant in the geography bee.  The Court finds as a matter of law that Clausen lacks standing to pursue a Title IX discrimination claim in this particular case.  See Doe v. Oyster River Coop. Sch. Dist., 992 F. Supp. 467, 481

(D.N.H. 1997) (finding that only the participant of federally funded program, not the participant's parent, had standing to bring claims under Title IX).

### 2.   <u>RETALIATION</u>

The second basis for a Title IX claim is retaliation.  To plead a prima facie case of retaliation, the plaintiff must allege that (1) he engaged in a protected activity; (2) the federally-funded recipient took an adverse action against him; and (3) the adverse action was causally linked to the protected activity.  <u>Thorn v. Almagamated Transit Union</u>, 305 F.3d 826, 831 (8th Cir. 2002).  Clausen alleges that the protected activity he engaged in was making complaints to the National Geographic Society that its geography bee was biased against females.  The only factual allegation in the complaint in support of this claim of bias is that "90% of the Bee state winners are boys."  No legal authority has been cited to support this claim.

It is well-established that Title IX prohibits gender inequity in connection with opportunities to participate.  <u>Miami Univ. Wrestling Club v. Miami Univ.</u>, 302 F.3d 608, 615 (6th Cir. 2002).  Federally-funded education recipients violate Title IX when they fail to provide similar opportunities to participate to females as they do to males.  Clausen's complaint is essentially that, although the National Geographic Bee is open to both males and females and both compete in the event, the males win more often at a particular level in the competition than the females.

The Court finds as a matter of law that an alleged failure by females to win the national geography bee as often as males neither establishes nor supports a Title IX violation.  Title IX neither guarantees nor suggests that females must win as often as males.  Clausen has failed to allege any facts to establish that he was engaged in a protected activity, nor has he presented any facts or

13

legal authority to support the premise that males winning a national geography bee more often than females supports a Title IX violation. Therefore, Clausen's claim of retaliation fails as to the first required element.

Clausen's claim of retaliation also fails as to the second element which requires that the federally-funded education recipient take some adverse action against him. Clausen has alleged that the adverse action taken against him was that the National Geographic Society forced him to resign from his position on the ND Alliance Board and/or that the amendment to the ND Alliance Constitution in February 2008 constitutes adverse action taken against him. However, Clausen has acknowledged that he resigned from the ND Alliance Board because the Board decided to sign a grant agreement offered by the NGS Foundation. Clausen's objections to the grant agreement were based on the fact that it did not include a program he wanted and his belief that the ND Alliance would not be able to accomplish all of the programs described in the agreement. Clausen has acknowledged that his objections to the grant agreement were based on obligations that the agreement would impose on the ND Alliance. However, none of those obligations to which Clausen has objected were imposed personally upon him. The other members of the ND Alliance Board had no objection to the obligations the agreement imposed, and other board members urged Clausen to sign the grant agreement on behalf of the ND Alliance. Despite Clausen's contention that he would be committing perjury and fraud if he signed the grant agreement, the ND Alliance was the entity that was liable under the agreement – not Clausen himself.

Further, the amendment to the ND Alliance Constitution occurred <u>after</u> Clausen ended his involvement with the ND Alliance. The changes to the constitution included the addition of a dues provision and changes to the membership. The purposes of the charitable organization and the

14

duties of board members remained the same.  There was no action taken disadvantageous to Clausen and, as such, the amendments to the constitution do not constitute adverse action for purposes of a Title IX claim of retaliation.

Title IX does not afford a plaintiff the right to prescribe the grant application form that one charity will offer another.  Nor does Clausen's resignation from the charitable board because the other board members wanted him to sign the grant application constitute an actionable adverse action or retaliation under Title IX.  The Court finds that Clausen has failed to allege sufficient facts to establish an adverse action and he has failed to establish, as a matter of law, that he engaged in a protected activity.  As a result, the retaliation claim under Title IX should be dismissed.

In summary, the factual allegations in the complaint are insufficient to establish a Title IX discrimination or retaliation claim.  Clausen's complaints to the National Geographic Society do not amount to sex discrimination under Title IX.  Discrimination does not exist merely because one gender wins more frequently than the other when both have an equal opportunity to participate in the same event.  Further, the Court finds as a matter of law that choosing a different grant application and adopting a new constitution does not amount to an adverse action under Title IX.  Therefore, Clausen failed to allege sufficient facts to establish a claim under Title IX of the Educational Amendments of 1972, 20 U.S.C. §§ 1681 et seq.

### B.     STATE EMPLOYER RETALIATION

According to North Dakota law,

1.  An employer may not discharge, discipline, threaten discrimination, or penalize an employee regarding the employee's compensation, conditions, location, or privileges of employment because:

a. The employee, or a person acting on behalf of an employee, in good faith, reports a violation or suspected violation of federal, state, or local law, ordinance, regulation, or rule to an employer, a governmental body, or a law enforcement official.

. . .

c. The employee refuses an employer's order to perform an action that the employee believes violates local, state, or federal law, ordinance, rule, or regulation.  The employee must have an objective basis in fact for that belief and shall inform the employer that the order is being refused for that reason.

N.D.C.C. §§ 34-01-20(1)(a) and (c).  The elements for a retaliatory discharge claim under the North Dakota whistle-blower statute, N.D.C.C. § 34-01-20, are "(1) the employee engaged in a protected activity; (2) the employer took adverse action against the employee; and (3) the existence of a causal connection between the employee's protected activity and the employer's adverse action."  Heng v. Rotech Med. Corp., 688 N.W.2d 389, 397 (N.D. 2004) (citations omitted).  The time for making such a claim is 180 days "after the alleged violation" or "completion of proceedings under subsection 4."  N.D.C.C. § 34-01-20(3).  Subsection 4 allows a claimant to file a complaint with the Department of Labor within 300 days "after the alleged act of wrongdoing," but does not require an employee to file the complaint with the Department of Labor before bringing a civil action.  N.D.C.C. § 34-01-20(4).

The Defendants contend that Clausen's claim under the state whistle-blower statute is barred by the statute of limitations.  Clausen argues that the Defendants committed retaliatory acts against him as late as February 2008, when the new ND Alliance Constitution was adopted.  While at this stage of the proceeding the Court must deem the allegations in the complaint as true, the complaint does not allege that Clausen was an employee in February 2008.  The undisputed facts reveal that Clausen resigned as the ND Alliance director in February 2007, and resigned as the MSU

16

Development Foundation representative to the ND Alliance Board in May 2007.  See Docket No.

1-1.  Clausen commenced this action in November 2008 which is more than 180 days after he

resigned from the ND Alliance Board.  Further, the Court finds, as a matter of law, that the

amendment of the constitution does not constitute discrimination or retaliation under North Dakota

law.  Clausen's claim of retaliation under N.D.C.C. § 34-01-20 is barred by the statute of limitations.

### C.    STATE HUMAN RIGHTS ACT

Clausen also contends that the Defendants violated the North Dakota Human Rights Act,

N.D.C.C. ch. 14-02.4.  N.D.C.C. § 14-02.4-01 states, "It is the policy of this state to prohibit

discrimination on the basis of . . . sex . . . ; to prevent and eliminate discrimination in employment

relations . . . ; and to deter those who aid, abet, or induce discrimination or coerce others to

discriminate."  The Act prohibits retaliation:

> It is a discriminatory practice for a person to conceal unlawful discrimination or aid,
> abet, compel, coerce, incite, or induce another person to unlawfully discriminate in
> violation of this chapter, or to engage in any form of threats, retaliation, or
> discrimination against a person who has opposed any unlawful discriminatory
> practice or who, in good faith, has filed a complaint, testified, assisted, or
> participated in an investigation, proceeding, hearing, or litigation under this chapter.

N.D.C.C. § 14-02.4-18.  The elements of discrimination under the North Dakota Human Rights Act

are "(1) [the Plaintiff] was a member of a protected class under the Act; (2) [the Plaintiff] was

satisfactorily performing the duties of [his] position; (3) [the Plaintiff] suffered an adverse

employment decision; and (4) others not in the protected class were treated more favorably."

Koehler v. County of Grand Forks, N.D., 658 N.W.2d 741, 746 (N.D. 2003).  The time for making

a claim under the North Dakota Human Rights Act is within 300 days "of the alleged act of

wrongdoing."  N.D.C.C. § 14-02.4-19(2).

17

The Defendants contend that Clausen's claim for discrimination under this statute is also barred by the applicable statute of limitations.  Clausen argues that the adoption of the new ND Alliance Constitution in February 2008 constitutes an "alleged act of wrongdoing" against him which would be the trigger date for this claim.  The Court finds as a matter of law that the act of adopting a new constitution while Clausen was no longer an employee does not satisfy the element of "an adverse employment action" under the statute.  Clausen commenced this action more than 300 days after he resigned from the ND Alliance Board.  Therefore, Clausen's state law discrimination claim under the Human Rights Act, N.D.C.C. ch. 14-02.4, is also barred by the applicable statute of limitations.

### D.      BREACH OF CONTRACT

This Court cannot hear a breach of contract claim unless the plaintiff has standing to sue under North Dakota law.  Myers v. Richland County, N.D., 429 F.3d 740, 749 (8th Cir. 2005). Under North Dakota law, "[t]he elements of a prima facie case for breach of contract are: (1) the existence of a contract; (2) breach of the contract; and (3) damages which flow from the breach." WFND, LLC v. Fargo Marc, LLC, 730 N.W.2d 841, 848 (N.D. 2007) (citing United States v. Basin Elec. Power Coop., 248 F.3d 781, 810 (8th Cir. 2001); N.D.C.C. § 32-03-09; Kuhn v. Marquart, 178 N.W. 428, 429 (N.D. 1920)).  The non-performance of a contractual duty when it is due is a breach of contract.  WFND, LLC, 730 N.W.2d at 848 (citing Restatement (Second) of Contracts § 235(2) (1981)).  The plaintiff has the burden of proving the elements of a breach of contract.  WFND, LLC, 730 N.W.2d at 848.  Whether a party has breached a contract is a question of fact, while the interpretation of a contract is a question of law.  Id. at 849.

18

Clausen alleges a breach of contract claim against the Defendants based on the terms in the Memorandum of Agreement Creating the Fund and the ND Alliance Constitution.  By not requiring the ND Alliance to publish a magazine and be located in Minot, North Dakota, Clausen contends that the Defendants violated the conditions that he required in the Memorandum of Agreement Creating the Fund and the ND Alliance Constitution.   Clausen also contends that the NGS Foundation breached the Memorandum of Agreement Creating the Fund by failing to apply income from the fund for the specified purposes and failing to appropriately consider recommendations of the advisory body.   The Defendants contend that Clausen lacks standing to pursue a breach of contract claim because Clausen was not a party to any contract with the Defendants.  Clausen argues that the ND Alliance Constitution was an express contract between he and the ND Alliance.  Clausen further contends that an implied contract existed based on his reliance to his detriment of the terms in the Memorandum of Agreement Creating the Fund and the ND Alliance Constitution.

In an express contract, the "parties arrive at their agreement in clear and positive words, either oral or written," while an implied contract's existence and terms are manifested by conduct. Stark County, N.D. v. North Dakota, 160 N.W.2d 101, 105-06 (N.D. 1968); see also N.D.C.C. § 9-06-01.  Clausen contends that the ND Alliance Constitution was an express contract between he and the ND Alliance.  The Court disagrees.  The constitution sets forth the rules and administration that establish the ND Alliance.  Clausen resigned as a ND Alliance Board member in May 2007.  In February 2008, the organization amended its constitution.  Clausen has wholly failed to establish facts sufficient to show a breach of contract occurred, and any reliance upon the constitution of a private organization to establish an express contract is misplaced.  No breach of contract occurs

when an organization exercises its inherent authority to change provisions of its governing documents after a board member resigns.

Clausen also argues that an implied contract existed between he and the Defendants based on Clausen's reliance, to his detriment, of the terms in the Memorandum of Agreement Creating the Fund and the ND Alliance Constitution.  Clausen points to the original ND Alliance Constitution which includes articles that the ND Alliance "publishes the [ND Alliance] Magazine" and that the administrative office will be located in Minot, North Dakota and the MSU Business Office will serve as the fiscal manager.  The complaint does not allege that the Defendants promised, either orally or in writing, to publish a ND Alliance magazine or to keep the ND Alliance administrative office in Minot, North Dakota.  There is also no allegation that the administrative office has moved, and the provision stating the administrative office will be located in Minot, North Dakota is still found in the ND Alliance By-Laws.  There are simply no facts alleged which remotely support the existence of an express or implied contract in this case.

Third-party beneficiary status is also alleged by Clausen in support of the breach of contract claim.  "A contract made expressly for the benefit of a third person may be enforced by that person at any time before the parties thereto rescind it."  N.D.C.C. § 9-02-04.  Under North Dakota law, intended, but not incidental, beneficiaries have standing to enforce an agreement.  Myers v. Richland County, N.D., 429 F.3d 740, 749 (8th Cir. 2005).  The Court "'must look to the intentions of the parties to the contract,'" which "'must be ascertained from the *written contract alone, if possible*, but where the contract is ambiguous it may be explained by reference to the circumstances under which it was made.'"  Id. (emphasis in original) (citing O'Connell, 317 N.W.2d at 388); see also

N.D.C.C. § 9-07-04. Whether a contract or its terms are clear and unambiguous is a question of law. O'Connell, 317 N.W.2d at 388.

The MSU Development Foundation, to which Clausen was a contributing member, and the NGS Foundation, were the parties named in the Memorandum of Agreement Creating the Fund. Clausen contends that the MSU Development Foundation and the NGS Foundation intended that he, as the representative and large contributor to the MSU Development Foundation and as the director of the ND Alliance, would be expressly benefitted by the agreement. However, the record does not support a finding that the MSU Development Foundation and the NGS Foundation contemplated expressly benefitting Clausen. There was no express mention of Clausen nor his personal contribution in the agreement. The agreement's purpose was to create the fund. The Memorandum of Agreement Creating the Fund is clear and unambiguous. The Court finds as a matter of law that the facts as alleged do not support a third-party beneficiary claim.

### E.      FRAUD

Clausen also argues that the Defendants committed actual and constructive fraud under Sections 9-03-08 and 9-03-09 of the North Dakota Century Code. In order to bring a claim for actual or constructive fraud, a contract must exist between the plaintiff and the defendant and none exists in this case.

### 1.      ACTUAL FRAUD

The complaint alleges that the NGS, the NGS Foundation, and the ND Alliance "suppressed the truth, made promises with no intent of performance and committed acts fitted to deceive Plaintiff

and others constituting actual fraud."  <u>See</u> Docket No. 1-1.  North Dakota law defines actual fraud as follows:

> Actual fraud within the meaning of this title consists in any of the following acts committed by a party to the contract, or with the party's connivance, with intent to deceive another party thereto or to induce the other party to enter into the contract:
>
> 1.  The suggestion as a fact of that which is not true by one who does not believe it to be true;
>
> 2.  The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true though that person believes it to be true;
>
> 3.  The suppression of that which is true by one having knowledge or belief of the fact;
>
> 4. A promise made without any intention of performing it; or
>
> 5.  Any other act fitted to deceive.

N.D.C.C. § 9-03-08.  "Actual fraud is always a question of fact."  N.D.C.C. § 9-03-10.

The Defendants contend that Clausen lacks standing to assert actual fraud because no contract existed between Clausen and the Defendants.  The Court agrees.  Actual fraud applies to parties of a contract.  <u>Erickson v. Brown</u>, 747 N.W.2d 34, 44 (N.D. 2008).  There are no allegations in the complaint which would, if proved, support a claim of actual fraud.  Since no contract existed between Clausen and the Defendants, Clausen has not alleged facts sufficient to support a claim of actual fraud.

### 2.   <u>CONSTRUCTIVE FRAUD</u>

Clausen also argues that the Defendants committed constructive fraud which consists of the following:

1.  In any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault or anyone claiming under that person, by misleading another to the other's prejudice or to the prejudice of anyone claiming under the other; or

2.  In any such act or omission as the law specially declares to be fraudulent without respect to actual fraud.

N.D.C.C. § 9-03-09.  Constructive fraud is generally used to characterize a misrepresentation made without knowing it is false.  Id.  "[C]onstructive fraud arises from a breach of a duty which is owed ordinarily because of a fiduciary or confidential relationship between the parties."  Land Office Co. v. Clapp-Thomssen Co., 442 N.W.2d 401, 406 (N.D. 1989).  A fiduciary or confidential relationship exists in a "business agency, professional relationship, or family tie impelling or inducing the trusting party to relax the care and vigilance ordinarily exercised.  In a fiduciary relationship, the superior party has a duty to act in the dependent party's best interest."  Nesvig v. Nesvig, 676 N.W.2d 73, 80 (N.D. 2004) (citations omitted).  "A person's implicit faith in another's honesty and integrity is insufficient to establish a fiduciary relationship; nor does a fiduciary or confidential relationship ordinarily exist when business persons deal with each other at arm's-length."  Land Office Co., 442 N.W.2d at 406 (citations omitted).  Constructive fraud also requires the existence of a contract between the parties.  See Heart River Partners v. Goetzfried, 703 N.W.2d 330, 341 (N.D. 2005).

The Court finds that no fiduciary relationship existed between Clausen and the Defendants.  As the director of the fund, Clausen would owe the fund a fiduciary duty, but the fund would not owe him the same duty.  See Prod. Credit Ass'n of Fargo v. Ista, 451 N.W.2d 118, 121 (N.D. 1990) (finding that officer or director of corporation owes a fiduciary duty to the corporation).  The mere fact that Clausen donated to the MSU Foundation, which in turn contributed to the fund, does not

give rise to the formation of a fiduciary relationship between Clausen and the Defendants.  Since

no contract <u>or</u> fiduciary relationship existed between Clausen and the Defendants, Clausen has not

alleged facts sufficient to support a claim of constructive fraud.


**V.**      <u>**CONCLUSION**</u>

The Court finds that the evidence is clear and undisputed that Clausen's claims under the

state whistle-blower statute, N.D.C.C. § 34-01-20, and the state Human Rights Act, N.D.C.C. ch.

14-02.4, are time-barred and should be dismissed as a matter of law.  The Court also finds that

Clausen has failed to assert a valid Title IX, breach of contract, actual fraud, or constructive fraud

claim, and all such claims should be dismissed as a matter of law.  For the foregoing reasons, the

Defendants' Motion for Judgment on the Pleadings (Docket No. 10) is **GRANTED**.

**IT IS SO ORDERED**.

Dated this 9th day of October, 2009.

*/s/  Daniel L. Hovland*              
Daniel L. Hovland, Chief Judge
United States District Court